UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


CHANAN NATHAN PASIK,          *    Case No. 19-CV-02357(FB)
                             *
           Plaintiff,        *    Brooklyn, New York
                             *    January 10, 2020
      v.                     *
                             *
BOON TECHNOLOGIES, LLC,       *
 et al.,                     *
                             *
           Defendants.       *
                             *
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE JAMES ORENSTEIN
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          MARK SCHLACHET, ESQ.
                            Law Offices of Mark Schlachet
                            3515 Severn Road
                            Cleveland, OH  44118

For the Defendants:         JONAS NOAH HAGEY, ESQ.
                            BraunHagey & Borden LLP
                            7 Times Square
                            New York, NY  10036

                            DAVID KWASIEWSKI, ESQ.
                            MATTHEW B. BORDEN, ESQ.
                            BraunHagey & Borden LLP
                            351 California Street
                            San Franscisco, CA  94104



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 9:33 a.m.)

2          THE CLERK:  Civil cause for a status conference,

3    Pasik versus Boon Technologies, LLC, et al, docket No.

4    19Civil2357.

5          Would you all please state your appearances for the

6    record, starting with the plaintiff.

7          MR. SCHLACHET:  Mark Schlachet for the plaintiffs.

8          THE COURT:  Good morning.

9          MR. SCHLACHET:  Good morning, Your Honor.

10         MR. HAGEY:  Good morning, Your Honor.  Noah Hagey,

11   with BraunHagey & Borden, for the defense.  And I have with me

12   my colleagues, Matthew Borden.

13         MR. BORDEN:  Good morning, Your Honor.

14         THE COURT:  Good morning.

15         MR. HAGEY:  As well as David Kwasniewski, and our

16   client, one of the defendants in the case, Stephanie Boone,

17   who is also a founder and relevant corporate officer of the

18   corporate defendant.

19         THE COURT:  Good morning.  Have a seat, please.

20         MR. HAGEY:  Thank you.

21         THE COURT:  All right.  So let me start, Ms. Boone,

22   with you.  Normally, I don't require parties to be here if

23   they're represented by counsel.  They don't need to be here if

24   you've got counsel handling their affairs.

25         As I'm sure you know by now, I'm considering various

3

1    forms of remedial action against you and your lawyers for

2    things that your lawyers have done that were, frankly,

3    shocking to me, after I warned them not to do it.

4            One concern I have, of course, is making sure that

5    if I take any remedial action, I do so against the

6    appropriate, you know, persons.

7            If this is something where your lawyers were doing

8    something that -- frankly, I've never seen anything quite so

9    bad in over 30 years as a lawyer -- if it's something that

10   they did on their own without your knowledge or without your

11   approval, only they should suffer the consequences.

12           If this is something where you knew what they were

13   doing, and you said, yeah, go for it, then I think remedial

14   actions might be appropriate as against you and your company.

15           So -- but I'm also sensitive that, you know, you

16   have confidential privileged conversations with your counsel.

17   So tell me as much or as little as you want.  Consult with

18   your lawyers about that.

19           And, also, you know, if you were in the dark about

20   all this, that would affect -- I would you to know so that you

21   could make any decisions.  I don't want to give you any advice

22   about what to do at all.  It's none of my business.

23           But I want to make sure you're aware of what's going

24   on, so that you can make any decisions you want to make about

25   how to proceed in defending the litigation.

1          So like I said, I'm not asking you to reveal

2    anything privileged.  Totally your business.  But in the

3    absence of any information, I would have to assume that the

4    lawyers have done what they've done as your agents, and with

5    your approval, and this is how you want them to litigate the

6    case.

7          Is that how you would like me to proceed?

8          MR. HAGEY:  And, Your Honor, if I may --

9          THE COURT:  I had a question for Ms. Boone.  Have a

10   seat, please.

11         MR. HAGEY:  I appreciate --

12         THE COURT:  Have a seat, please.

13         MR. HAGEY:  -- that, Your Honor.  Thank you.

14         THE COURT:  Is that how you would like me to

15   proceed?

16         MS. BOONE:  Your Honor, I would just say that I'm

17   not an attorney and this is the first time I've ever been

18   involved in any sort of litigation.  So I'm trying to come up

19   to speed on what's going on here.

20         THE COURT:  But you've talked to your counsel about

21   this, I'm sure, before coming here today?

22         MS. BOONE:  I mean, I've read the documentation.  I

23   can't say that I completely understand everything about why

24   we're here.

25         THE COURT:  Well, let me -- let me tell you why I

5

1    think we're here.

2              MS. BOONE:  Thank you.

3              THE COURT:  As far as I can tell, this is a routine

4    case.  You know, sort of things that get filed all the time.

5    I asked the parties to, as I always do, give me submission to

6    plan for the exchange of information, called discovery.  It

7    took some doing to get your lawyers to participate in that.

8              And then when they finally did, the only pieces of

9    information about the case that they provided wasn't about the

10   case.  It was about an investigation of the plaintiff's

11   counsel from the early 1980's.

12             And I was stunned, to say the least, but -- well,

13   I'll just quote you what I said to them.  This is back on

14   September 25th.  And, counsel, if you're interested, I'm

15   starting on page four of the transcript near the bottom.

16             Mr. Kwasniewski, have a seat, and your submission,

17   which I think is by far been more troubling, you've violated

18   Rule 5(d) to put before the Court what purports to be initial

19   disclosures, which 5(d) makes clear you shouldn't do.

20             And that's -- he had -- there are things that

21   lawyers exchange with each other to provide information about

22   the case that there's a rule that says you shouldn't file on

23   the public docket.  Share it with each other, but you don't

24   put it on court -- so that's what I was referring to there.

25             Your initial disclosures were a transparent effort

6

1    to sully Mr. Schlachet's reputation without accomplishing

2    anything in the case.  Your list of witnesses include the

3    plaintiff and personnel of the defendant.  You don't identify

4    people, though you clearly know who your people are.  That's

5    because they're people just identified by title or position,

6    not here's who they are.

7          You don't identify any documents that you're going

8    to use in your defense, except the one document from 40 years

9    before the case arose.

10          So two completely independent reasons that are

11    independent of your reference to, well, that 40 year old

12    report may have some relevance to a motion to certify a class,

13    which we'll get to in a moment, but completely independent of

14    that, you submitted a report unilaterally, contrary to my

15    instructions, and you submitted that within that initial

16    disclosures in contravention of Rule 5(d), meaning they

17    violated that other rule about what you can properly file on

18    the public docket.

19          For that reason alone, I'm striking it -- the

20    initial disclosure -- and I'm also striking the unilateral

21    submission by the plaintiff.  Neither should have been put on

22    the docket.

23          You have a fig leaf for putting that investigative

24    report from 40 years ago on the docket, and that might serve

25    you to get past a grievance committee investigation into

7

1    whether you violated the New York Code of Professional

2    Responsibility, Rules 3.1(a) and (b)(2), about non-meritorious

3    contentions, and also Rule 3.4(d)(1) about fairness to

4    opposing party and counsel.

5            It says that a lawyer shall not, in appearing before

6    tribunal on behalf of a client, state or allude to any matter

7    that the lawyer does not reasonably -- emphasize reasonably --

8    reasonably believe is relevant or that will not be supported

9    by admissible evidence.

10           So like I say, the arguments that you put in your

11   letter might be a sufficient fig leaf to get you past

12   discipline.  I don't want to see anything like that again in

13   this case from you or from you ever.

14           And it gives me some serious pause to whether your

15   motion for admission pro hac vice should be granted.  Pro hac

16   vice meaning somebody who is not admitted in this district, is

17   allowed to practice for purposes of the one case.

18           It gives me serious pause to whether your motion for

19   pro hac vice should be granted.  It was a low blow.  Tell your

20   colleagues on the case not to do it again.  Am I understood?

21           And Mr. Kwasniewski, I notice is looking away, said,

22   I understand, Your Honor.  And I thought the matter was behind

23   us.  I thought I would never see any reference to that

24   investigative report again.

25           Are you with me so far?  You understand what's going

1    on?  You understand why I was concerned, right?

2              MS. BOONE:  Yes, Your Honor.

3              THE COURT:  It has nothing to do with the case.

4    There was an argument that Mr. Kwasniewski had made about how

5    this decades old issue might be relevant to a later inquiry

6    about whether Mr. Schlachet is adequate counsel for a class.

7              And I said, you know, to me, it was obviously not

8    that , for reasons we can get into.  I said, look, that's a

9    fig leaf.

10             Based on that, you know, you can skate by being

11   referred to a disciplinary committee and sanctioned as a

12   lawyer for violating the Rules of Conduct.  I don't want to

13   see it ever again.  He told me he understood and I told him to

14   tell his colleagues.  And he told me he would.

15             And then when they're asking for information about

16   the case from the plaintiff, they send to Mr. Schlachet these

17   requests to see what the plaintiff has -- what documents the

18   plaintiff has about this decades old investigation into Mr.

19   Schlachet.  Obviously, something the plaintiff wouldn't have,

20   right?  Mr. Schlachet might.

21             But -- and I take it you agree there's, Mr. Hagey,

22   there's no reason to think the plaintiff would have anything.

23   There was no good faith basis for saying the plaintiff has any

24   such documents.  Correct?

25             MR. HAGEY:  Your Honor, we believe the -- in as a

1    standard in this kind of circumstance, you would ask the

2    request to the plaintiff documents in the plaintiff's counsel

3    possession.

4              THE COURT:  Yes.  And if they're in counsel's

5    position -- they're in counsel's possession as the agent of

6    the plaintiff.  In other words, you can't hide something

7    that's discoverable by giving it to counsel.

8              But if he has something in his possession that

9    wasn't given to him by plaintiff, that is not subject to

10   discovery.  Right?

11             MR. HAGEY:  Not in a class case, Your Honor.

12             THE COURT:  Oh, for goodness sake.  It -- part of

13   the reason we're here, Ms. Boone, is that your counsel keeps

14   making it worse.

15             They double down and triple down on trying to

16   embarrass this man for something that happened decades ago,

17   which maybe was good or bad.  I don't know.  It was never

18   resolved, as your lawyers know.

19             Anyway, the short of it is they keep bringing it

20   back.  And if that's how you want to litigate the case, okay,

21   that's your decision and I'll make my decisions about what

22   should happen as a result.

23             If this is something where -- I don't want you to

24   react to me, because this is something for you to discuss with

25   your lawyers.  I just want to make sure you're aware of it.

1          But if you're saying, my God, the Judge told you not

2     to do it again and you're still doing it, and you're shocked

3     by this, and, you know, I don't want you to be punished in

4     your defense of the case, by having lawyers that won't listen

5     to a Judge.

6          So what I'm trying to get from you, and I'll give

7     you a break so you can talk to your lawyers before you respond

8     to me, is all I can do is assume that a party intends to do

9     what its lawyers are doing in its name.

10          And so I will take whatever action I think is

11     appropriate here, after listening to counsel, with respect to

12     the party.

13          If you want me to think otherwise that this has

14     nothing to do with the party and it's the lawyers acting sort

15     of on their own, I'll hear you about that.  I want you to have

16     that opportunity.

17          MS. BOONE:  Thank you, Your Honor.

18          THE COURT:  Do you want to take -- so do you think

19     you understand the question that I'm asking?

20          MS. BOONE:  I believe so, Your Honor.

21          THE COURT:  Okay.  Do you want a moment to talk it

22     over with your lawyers?

23          MS. BOONE:  Please.

24          THE COURT:  Okay.  We've got a conference room just

25     outside these double doors, if you want an office.

1          (Court recessed from 9:45 a.m. to 9:52 a.m.)

2               MR. HAGEY:  All right.  Are we still on the record?

3               THE COURT:  Yes.

4               MR. HAGEY:  Thanks, Your Honor.  We appreciate the

5     opportunity to confer with our client.  I think that Ms. Boone

6     had actually prepared a statement that I think addresses --

7               THE COURT:  Go ahead.  I'll hear it.

8               MR. HAGEY:  -- the heart of the --

9               THE COURT:  I'll hear it.  Have a seat.

10              MR. HAGEY:  -- Court's --

11              THE COURT:  Have a seat, please.

12              MR. HAGEY:  -- concern --

13              THE COURT:  Let your client speak, please.  Go

14    ahead.

15              MR. HAGEY:  Thank you, Your Honor.

16              MS. BOONE:  Thank you, Your Honor.

17              Your Honor, thank you for the opportunity to address

18    you today.

19              Obviously, much of today's hearing and Your Honor's

20    order concern issues that are outside of my expertise.  I'm a

21    business owner and a founder of the defendant in this case,

22    Wondercide.

23              We're a small company based in Austin, Texas with 25

24    employees.  Our mission is to make safe and effect pets

25    protection products, like flea and tick control, to protect

1    pets and their families.

2              Further, these products don't contain toxic

3    chemicals or carcinogens and are compliant with EPA 25B

4    federal laws and US state regulations.

5              THE COURT:  I'm sorry.  I thought you wanted to

6    address the issues before me today.

7              MS. BOONE:  I came here today because I respect your

8    court and certainly Your Honor's order.  I understand the

9    Court is concerned with my counsel's work in this case, and to

10   hear that is very distressing to me.

11             Mr. Hagey and his firm came highly recommended to

12   me.  I understand that Noah, Matt, and David have represented

13   many small businesses in similar cases, so I'm inclined to

14   trust their work and their reputations.

15             They appear to take pride in protecting people like

16   me from frivolous claims and allegations extended to extort

17   money that would only go to enrich the lawyers.

18             Let me get to -- this is the first time I've ever

19   been involved, as I stated earlier, in any legal matter of

20   this kind, and it's scary.  In fact, the only time I've ever

21   been in court is to serve jury duty.

22             You know, I believe that the complaints make false

23   allegations that our products were safe when the ingredients

24   are minimum risk for the EPA FIFRA and grass, which by

25   definitions, generally recognized as safe to humans and the

13

1    environment, and we've always listed our ingredients on our

2    labels, online, and everywhere.

3            I know Your Honor is aware of this, but as the

4    person most affected here, I am frustrated that a lawyer is

5    allowed to sue us and hurt our business and, frankly, my

6    reputation, because if he loses, there's no consequence,

7    there's no downside, and with a simple complaint, a lawyer can

8    cause a small business to incur hundreds of thousands of

9    dollars in legal fees.

10           Without disclosing the detail of our attorney/client

11   privilege, I know they've worked hard to understand my

12   business to research the issues in the case and are trying to

13   help protect me and our employees.

14           The money we're spending defending the lawsuits are

15   funds we had intended to use on new hires and launch products

16   and other things of that matter.

17           I think it's important to note that we're not a

18   venture or private equity backed company.  We're self-funded

19   and the funding -- and funding the growth of our business with

20   debt financing from the U.S. Small Business Administration.

21           Also, plaintiff's attorney noted in his initial

22   filing, you know, that I received -- noted that we had

23   received investments from "Shark Tank," which is also untrue

24   and is public record.  We were on the show and it was offered,

25   but we did not take the investment.  Only the burden of a

14

1    spotlight of this frivolous case.

2           So to answer Your Honor's question --

3           THE COURT:  Oh, okay.  You're going to answer it?

4           MS. BOONE:  I'm doing my best, Your Honor.

5           THE COURT:  Okay.  Good.  Thank you.  Yes.

6           MS. BOONE:  I don't know the rules about whether it

7    is okay to ask for information about a plaintiff's lawyer,

8    about misconduct.

9           From reading our submission to Your Honor, it

10   appears that this is something that other courts have allowed

11   the defendant to look into.  But as a lay person and a

12   business owner, it strikes me wrong that a plaintiff's lawyer

13   could ask to be a fiduciary of a group of consumers when he --

14          THE COURT:  I'm listening.  I'm listening very

15   carefully.

16          MS. BOONE:  -- when he was previously found to have

17   been dishonest or corrupt.  And I feel like if my character

18   and integrity has been put into question, and I believe that

19   it has by naming me personally, it's not fair or just to not

20   evaluate both parties and their motivations.

21          Again, I don't have training or education in this

22   area and appreciate that you have much more experience in

23   these matters.

24          Just personally speaking as a client, I certainly

25   would want to know if my attorneys had ever been found to have

1   been engaged in bribery or corruption no matter how long ago

2   that occurred, and I feel like that's a serious matter.

3   You know, we -- we've spent a lot of time getting up

4   to speed in this case, and Noah and his team have filed a good

5   motion to dismiss, which I hope we'll win.  I don't

6   necessarily want to change teams at this time or incur

7   expenses of adding more lawyers.

8   And, again, to directly answer your question, while

9   I am aware of this, I'm a lay person and I'm not directing the

10  strategy of when things should be filed and what should be

11  filed.  I'm relying on my counsel to represent me in those

12  matters.

13  THE COURT:  All right.

14  MR. HAGEY:  And --

15  THE COURT:  Go ahead.  I'll hear --

16  MR. HAGEY:  -- just --

17  THE COURT:  -- whatever you have to say, Mr. Hagey.

18  MR. HAGEY:  Thank you, Your Honor.  I mean, I think

19  the pertinent part of Your Honor's question was who is

20  responsible for drafting their subject request for production.

21  THE COURT:  Is that the pertinent part of my

22  question?  I didn't realize.  Okay.  Thank you.

23  MR. HAGEY:  Well, I just --

24  THE COURT:  Anything else that you want to tell me

25  about what I had in mind?

16

1          MR. HAGEY:  Well, I was just going to say, Your

2     Honor, that our firm, I take responsibility --

3          THE COURT:  No, no.  You were --

4          MR. HAGEY:  -- for requests --

5          THE COURT:  -- you were starting to tell me what I

6     had in mind in my order.  What else did I have in mind?

7     Did -- was there -- or were you finished on that score?

8          MR. HAGEY:  With the court's indulgence, what I was

9     -- what I was trying to express is our understanding --

10         THE COURT:  No, no.  I just want to make sure I

11    understand what you're telling me, because you are -- you're

12    explaining to me what I had in mind, and you mentioned one

13    thing.  Were there other things that were my primary focus

14    that I've missed?

15         MR. HAGEY:  What I understood the import of Your

16    Honor's question to be is who was responsible for drafting

17    request for production of --

18         THE COURT:  All right.  You're mistaken --

19         MR. HAGEY:  -- 11 --

20         THE COURT:  -- about that.

21         MR. HAGEY:  -- 12 and 13.

22         THE COURT:  Please address, if you would, the issues

23    I asked you to address, and then I will take it under

24    advisement.

25         MR. HAGEY:  Thanks, Your Honor.  We're obviously

17

1    reading the countenance of the Court the -- the severity of

2    Your Honor's order to show cause was a very unhappy moment

3    before the beginning of the new year for sure.

4            I have to say that we take the Court's imprimatur

5    regarding the interest in having an efficient non-distracting,

6    non-superfluous proceeding in all cases, and including this

7    one, really seriously.

8            It has been our practice and our experience that

9    litigating cases, whether complex class cases, such as this,

10   which by the way aren't routine.

11           I mean this -- for my client, this is a seminal,

12   existential event for her and her company.  And I appreciate

13   that the Court has many of these on the docket, but for our

14   client it is --

15           THE COURT:  To the extent you're harping on routine,

16   I meant that --

17           MR. HAGEY: I appreciate that, Your Honor.

18           THE COURT:  -- in terms of case processing, there's

19   nothing out of the ordinary, except in the way counsel acted

20   and like I say, extraordinary in my years as a lawyer and

21   judge.

22           MR. HAGEY:  Your Honor, I hear those words --

23           THE COURT:  I wasn't denigrating the importance of

24   the case at all.  Continue, please.

25           MR. HAGEY:  Thank you, Your Honor.

1          The thing that struck me when we received this file

2     and we were evaluating the background and conferring about how

3     to look at discovery, Your Honor has set a very tight

4     schedule.  We have to do class discovery, essentially, at the

5     same time as we're doing merits discovery, given the deadlines

6     that are pertinent in the court's schedule.

7          In all my years of practice we've never seen a class

8     counsel have in that attorney's history a report and findings

9     from an appellate judiciary committee --

10          THE COURT:  To the extent that you're going to for

11     the at least fourth time in this case start going into what is

12     on the public record about that, please consider me

13     sufficiently familiar with what you have repeatedly put on the

14     public record.  You don't need to go into it again and I

15     direct you not to.

16          MR. HAGEY:  Very well, Your Honor. I appreciate

17     that.  All I was --

18          THE COURT:  Because this is not a further forum for

19     you to yet again do the thing that I told Mr. Kwasniewski to

20     tell you I didn't want to see again in this case.

21          For the record, so that there's no misunderstanding

22     about it, I deem it not a matter of discovery.  You clearly

23     have everything you need that further discovery on it would be

24     cumulative.

25          Whether you can pass the test of relevance is not

1    what I'm deciding, but it is cumulative. I don't want to hear

2    further public flogging of the matter.

3              MR. HAGEY:  I understand, Your Honor.  What I'm

4    trying to do is to express and explain to Your Honor, at least

5    from the defense counsel's perspective, that our approach in -

6    - in the history of the United States Judiciary, Your Honor,

7    there's only been probably 15 or 16 federal judges that have

8    experienced something similar and resigned under the

9    circumstances, that we could determine that face the

10   plaintiff's counsel.

11             THE COURT:  You're clearly not listening to me, but

12   I will listen to you.

13             MR. HAGEY:  Your Honor, what I'm trying to express,

14   Your Honor is saying the gravamen of what -- the transcript of

15   what happened in September should have been put our office on

16   notice that even asking questions about that event was

17   verboten.  And I appreciate that that is certainly -- in

18   hearing Your Honor and seeing Your Honor's disposition that

19   that -- Your Honor felt like that was crystal clear.

20             THE COURT:  When you saying seeing Your Honor's

21   disposition, what do you mean?  I am sitting here listening. I

22   am paying close attention to what you're saying.  What else?

23             MR. HAGEY:  I meant it metaphorically, Your Honor.

24             THE COURT:  Ahh.

25             MR. HAGEY:  You are -- you said, and we take this to

1    heart.  You said that in all of your time, you know,

2    practicing as an attorney that you were stunned to see this.

3            And all I'm trying to express to Your Honor is when

4    we saw this very strange and very incredible documentation

5    that, by the way, is public.  We've I think submitted to the

6    court references.

7            There are -- the *New York Times,* the *Washington*

8    *Post,* the *Cleveland Examiner*, all have referred to this issue.

9    It is something that in the ordinary course of litigating a

10   class case, of defending a class case, of testing the adequacy

11   of counsel -- and we're referred Your Honor to the decisions

12   of your colleagues on the bench, former colleagues on the

13   bench, such as Judge Adelman, who is no longer with us, that

14   part of our job, as the defense counsel, and indeed the court,

15   is to test the veracity and ethical nature, honesty and

16   integrity of the plaintiff into the adequacy.

17           The discovery that Your Honor has in front of you

18   was intended to do just that. And one of the issues, just by

19   way of example, that, you know, arose in the course of even

20   these proceedings, Your Honor, is -- concerns whether or not

21   these issues were ever noted or discussed to the New York Bar.

22           Now, Mr. Schlachet has represented to the court that

23   he didn't even register with the New York Bar until 2007.  But

24   according to the New York State Unified Court system, that's

25   not true.  He actually was admitted in New York --

21

1            THE COURT:  Your view --

2            MR. HAGEY:  -- in June of --

3            THE COURT:  -- is that we are here to litigate Mr.

4     Schlachet's conduct.  Is that right?

5            MR. HAGEY:  What I'm trying to do is --

6            THE COURT:  That's what you want to focus on today?

7            MR. HAGEY:  What I want do, Your Honor, is lay the

8     foundation to understand -- for the court to at least

9     appreciate a little bit that we are here in good faith --

10            THE COURT:  Mr. Hagey --

11            MR. HAGEY:  -- that the requests were in good faith.

12            THE COURT:  Mr. Hagey, I've told you the actions I'm

13    considering.

14            MR. HAGEY:  I appreciate that, Your Honor.

15            THE COURT:  I will tell you because I don't relish

16    the idea of most of these actions that I'm considering.

17    I think the protective order is a gimme.  I'll hear you on

18    that if you really want to be heard on that, but the others I

19    really -- I've never referred anyone to a disciplinary

20    committee.  I prefer to finish my career without doing it.

21    But what are doing thus far today is not helping your cause.

22            MR. HAGEY:  I want to --

23            THE COURT:  And I say that to you case I really

24    would prefer not to feel compelled to exercise the most

25    drastic remedies that I've identified.

22

1           But if -- notwithstanding that you wish to continue

2      litigating Mr. Schlachet's conduct this morning, by all means,

3      go ahead.

4           MR. HAGEY:  Your Honor, I'm not wishing to litigate

5      his conduct here at this hearing, but the question --

6           THE COURT:  But --

7           MR. HAGEY:  -- that the court is -- the pregnant

8      question that is posed by the court's order is was there any

9      foundation, first of all, was there a good faith basis under -

10     - whether it's New York disciplinary rules, ordinary canons of

11     Rule 11, the way in which we look at Rule 37 and the discovery

12     conduct of counsel in cases in federal court.

13          I'm just trying to express to the court and provide

14     Your Honor with information that we had a very firm good faith

15     basis to believe that this is a problem for the certification

16     of a class.

17          It's an issue that we are going to -- that the

18     defense -- that the court, we believe, would want to have

19     discovery on.  It's virtually -- it's literally --

20          THE COURT:  What do you think the plaintiff has in

21     the plaintiff's possession, custody or control, which does not

22     include what plaintiff's counsel owns personally?  What do you

23     think the plaintiff's likely to have in response to these

24     requests?   Anything?

25          MR. HAGEY:  Perhaps, Your Honor.

23

1          THE COURT:  Perhaps.  So this is just speculative.

2          MR. HAGEY:  Well, any discovery is based on the

3     premise that you don't know what the answer is going to be.

4          THE COURT:  So the plaintiff could ask Ms. Boone to

5     provide discovery about your diary, for example, correct?

6          MR. HAGEY:  Your Honor --

7          THE COURT:  Correct?

8          MR. HAGEY:  Your Honor, that's --

9          THE COURT:  Correct.  Is it correct?

10         MR. HAGEY:  About my diary?

11         THE COURT:  Your diary.  Or I don't know.  Anything

12    that you might have in your possession.

13         MR. HAGEY:  I was --

14         THE COURT:  You see I don't know what embarrassing

15    episodes in your past.  Could the plaintiff ask Ms. Boone to

16    provide discovery about them?

17         MR. HAGEY:  Your Honor, if --

18         THE COURT:  Answer the question, please.

19         MR. HAGEY:  In a case where I'm asking to be -- to

20    serve as fiduciary --

21         THE COURT:  Please answer my question --

22         MR. HAGEY:  As a fiduciary for a class, I'm trying

23    to --

24         THE COURT:  Please answer my question about

25    discovery of Ms. Boone.

24

1          MR. HAGEY:  Your Honor, if it's patently irrelevant

2     to the case, we are all familiar with the idea that it would

3     be outside the ordinary scope.

4          THE COURT:  Yes.

5          MR. HAGEY:  But what I'm --

6          THE COURT:  Yes.

7          MR. HAGEY:  -- and that's why --

8          THE COURT:  Mr. Hagey, there's a difference between

9     what's relevant to the case and you may have very strong

10    disagreements about that.  But that's not even the point.

11    It's a question of what do you think the plaintiff would have

12    responsive to that?

13         MR. HAGEY:  Your Honor, in every single case where

14    we've ever litigated class adequacy issues and asked for

15    information that would go to the nature of, you know,

16    potentially how a -- you know, a plaintiff allegedly came to

17    present the allegations, we've litigated many of these cases

18    where at their deposition the plaintiff ends of acknowledging

19    and admitting that they didn't even know or understand what

20    was in the complaint.

21         There are some strange circumstances in a situation

22    like this where we have an attorney who literally is based in

23    Ohio, who doesn't even have a New York office, who routinely

24    litigates --

25         THE COURT:  All right.  Stop.

Case 1:19-cv-02357-FB-JO   Document 42   Filed 01/23/20   Page 25 of 36 PageID #: 316

25

1      MR. HAGEY:  Your Honor --

2      THE COURT:  Stop.  Literally every question -- maybe

3  not literally.  That would be too strong.  But most of the

4  questions -- to get to your conduct, produce an answer where

5  it's -- you turn it around to talk about Mr. Schlachet.

6      MR. HAGEY:  I -- because --

7      THE COURT:  Excuse me.

8      MR. HAGEY:  Sorry, Your Honor.

9      THE COURT:  Is there a substantive point about

10  specific forms of -- specific remedial measures not addressed

11  in your papers that you feel should be addressed today?

12      MR. HAGEY:  Respectfully, Your Honor --

13      THE COURT:  And let me just finish -- sorry.  The

14  reason I say that is I truly feel that in our colloquy you are

15  doing yourself and your client more harm than good, and I've

16  tired to warn you off of that.

17      I am prepared to resolve the matter based on your

18  submissions.  My hope is that you'll allow me to do that

19  without making things worse, but if there's something that you

20  feel would benefit your side of things and your client's side

21  of things before we adjourn today, I will give you that

22  opportunity.

23      MR. HAGEY:  Thank you, Your Honor.

24      I must admit I feel on tenuous and totally uncertain

25  ground. I'm trying to provide the court with what I hoped

Fiore Reporting and Transcription Service, Inc.   203-929-9992

1    would be information that might be foundationally relevant to

2    the court's concern as to whether defense counsel, much less

3    our client, had a malignant intent, had some sort of spurious

4    and irrelevant and frivolous motivation in seeking the

5    discovery we did not.

6           I can only tell Your Honor that in the 20 years of

7    practice approximately here in New York and in defending these

8    kinds of class cases, and companies and businesses, small

9    businesses like Ms. Boone's, that this is something that we

10   deeply believe to be relevant and that just as Judge Adleman

11   was remarking in the *Kingstep Weslin* (ph) case, the inquiry

12   into the past conduct of class counsel is one of the

13   touchstone issues that you deal with under Rule 23.

14          And I feel like -- I understand the divide and the

15   tension that Your Honor is directing about not wanting to get

16   into frivolous, harassing issues.  We echo the court's

17   concern, but at the same time, Your Honor, we have issues that

18   have to be discovered.

19          And I don't know how to do that, and I don't know to

20   bring to the court's attention.  I don't know how to have that

21   issue fleshed out in a circumstance where I didn't even know -

22   - reading the transcript, I didn't even know that that was off

23   limits.

24          I understood that the court did not want us to be

25   filing -- refiling the Sixth Circuit Judicial Investigative

27

1    Committee's report in the record again, without some

2    foundation and guidance from Your Honor.

3            But certainly, just as Judge Adelman was reflecting

4    on the fact --

5            THE COURT:  When we're done today, would you give me

6    a count of how many times you're going to cite that?  Go

7    ahead.

8            MR. HAGEY:  Well --

9            THE COURT:  Apparently, I haven't heard it enough

10   from you today to know that you're relying on it, so just tell

11   me how many more times you'd like me to hear about it.

12           MR. HAGEY:  Sorry. It's --

13           THE COURT:  What's the over/under?  Ten, 15.

14           MR. HAGEY:  Maybe the echo of the case, and I

15   apologize, Your Honor, but when we -- when you're looking at

16   counsel such as us, all I would respectfully ask is that you

17   understand that we do come here with an interest in trying to

18   see the justice done, in trying to aid in the efficient

19   resolution of this matter.

20           I don't know how to do that in a class case where I

21   am -- I feel like I'm chilled -- like I don't know what

22   questions to ask in a deposition.  I don't know what kinds of

23   information we can request from the plaintiff.

24           THE COURT:  Really?  Okay.  I'm sorry you find

25   yourself in that position, because the one and only issue that

28

1    has come up as a point of contention is your insistence of

2    relitigating matters from the early 1980's that have literally

3    nothing to do with the substance of the plaintiff's claims.

4            So I think most lawyers --

5            MR. HAGEY:  Your Honor has --

6            THE COURT:  Excuse me. I'm not finished speaking.

7            I think most lawyers would not find it difficult to

8    figure out how to conduct discovery in those circumstances.  I

9    regret that you do. I'm not trying to be opaque.

10           MR. HAGEY:  I understand that.

11           THE COURT:  I'm not trying to create a sense of

12   uncertainty about whether you can inquire into the merits of

13   the case.

14           MR. HAGEY:  The --

15           THE COURT:  Now is it your intention still to

16   inquire in any form to seek more information in discovery

17   about the 1982 report or the investigation surrounding it?

18           MR. HAGEY:  Without guidance from this court and an

19   opportunity to actually have the potential relevance of that

20   issue actually briefed and presented to the court, whether

21   under seal or otherwise, no.  I feel that we are in jeopardy

22   should we even get into that territory at this point.

23           THE COURT:  Okay.  Is there anything else that you

24   think you're in jeopardy if you inquire into?

25           MR. HAGEY:  If we inquire into any of the -- you

1    know, any of the past conduct of the plaintiff's counsel?  I

2    don't know.  Is -- I don't know where that's fair game or not

3    --

4              THE COURT:  Are these instances of conduct that

5    you're --

6              MR. HAGEY:  -- at this point, based on the court's -

7    -

8              THE COURT:  All right.

9              MR. HAGEY:  -- direction.

10             THE COURT:  All right.  Yeah.  Okay.  So look.  Let's

11   do it this way.

12             Anything surrounding that investigation I think is

13   cumulative at this point, given the extensive information that

14   you know about and have placed on the public record.

15             If there's something else about plaintiff's counsel

16   separate from the merits of the claims that you think is

17   properly the subject of discovery, file a motion under seal. I

18   don't want you to get into trouble for doing something that

19   you think -- you're unsure about.  And anything else, I don't

20   know what you'd be worried about.

21             MR. HAGEY:  It's questions during deposition.  For

22   example, I'm just -- Mr. Schlachet's website extensively

23   refers to --

24             THE COURT:  Mr. Hagey --

25             MR. HAGEY:  -- his history as a bankruptcy --

30

1          THE COURT: -- the case is about the plaintiff's

2    claims. It's not about Mr. Schlachet.

3          MR. HAGEY:  But we have a duty to investigate Rule

4    23 --

5          THE COURT:  You have other duties under the Code of

6    Conduct, sir.

7          MR. HAGEY:  Your Honor, I appreciate that.

8          THE COURT:  And I'm not sure, honestly. I'm honestly

9    not sure.  Or if you do appreciate that, I'm not sure that you

10   think that they are equally important as your duty to overturn

11   every stone about opposing counsel's history.

12         The 1982 investigation, further discovery about that

13   would be cumulative and harassing.  Don't do it.

14         MR. HAGEY:  That is --

15         THE COURT:  I will take under advisement the other

16   forms of relief that I discussed.

17         MR. HAGEY:  We had -- thank you, Your Honor.

18         THE COURT:  Is there anything further for today?

19         MR. HAGEY:  Here's the quandary that we sit in.

20         I don't know whether Your Honor believes that it

21   would be appropriate for us to make a fuller record.

22         You obviously are interested in taking -- you've

23   communicated your interest in taking the matter under

24   submission.  You don't want to receive or hear necessarily any

25   of the other information we have.

1          I want to be respectful of that. I'm trying to read

2  Your Honor's -- what Your Honor is telling us.  I -- we have a

3  --

4          THE COURT:  Look.  You have fully responded --

5          MR. HAGEY:  I appreciate the court's --

6          THE COURT:  You have fully responded on the papers.

7  You've responded twice.  You --

8          MR. HAGEY:  May I ask you a question?

9          THE COURT:  Excuse me. I asked you to respond to the

10  order to show cause by December 31st.  You did it on January

11  1st.  No big deal.

12          Then you filed something supplemental.  Okay. I let

13  you do it.  I assume you've been fully heard on the papers. I

14  gave you an opportunity to speak today and it was, again, all

15  about Mr. Schlachet and your duty to investigate him.  Okay.

16          I don't think that there is anything further that is

17  needed.  Certainly, you've had a full opportunity to be heard

18  on the papers.

19          MR. HAGEY:  Well, the only question I would then

20  have for the court is whether the -- we had asked to be able

21  to introduce certain demonstrative exhibits.  These include

22  Mr. --

23          THE COURT:  I saw what was in your letter.  You want

24  to have press reports about Mr. Schlachet from the 1980's.

25          MR. HAGEY:  Because the premise of the protective

1    order was that somehow the issues that were within the Sixth

2    Circuit investigatory findings were unknown and that his

3    client would not have ever been able to be aware of them.  And

4    I just --

5         THE COURT:  That is not -- that is not it.

6         In any event, I certainly have before me your -- the

7    links to the items.  Was there something else you wanted to

8    hand up?

9         MR. HAGEY:  Yes, Your Honor.

10        THE COURT:  Hand it up and let's be done with it

11   today, shall we?

12        MR. HAGEY:  Thank you, Your Honor.

13        THE COURT:  Just hand up what you're going to hand

14   up.

15        MR. HAGEY:  Well --

16        THE COURT:  Just hand it up, Please. You've had your

17   letter saying what you're giving me is demonstrative.  Let's

18   have it, please.

19        MR. HAGEY:  May I just ask the court a question

20   before I approach the bench?

21        THE COURT:  If the court considers these materials

22   to be part of the record, then I don't think we need to go

23   through that formality.

24        If Your Honor would appreciate having the printouts,

25   we have copies here for yourself and for counsel.  We'd be

1    happy to provide them to the court.

2            THE COURT:  Whatever you want to do.  Whatever you

3    want to do. I'm not stopping you from doing what you to do,

4    Mr. Nagey [sic].  Please do it so we can finish up.  I've got

5    others waiting to proceed today.

6            MR. HAGEY:  Thank you, Your Honor.

7            THE COURT:  Just hand things over.  I don't need a

8    speech.

9        (Pause.)

10           MR. HAGEY:  May I just state for the record just the

11   title of the document?  I won't go into a speaking discussion

12   of what it contains.

13           This is printout of a section of Mr. Schlachet's

14   website, Your Honor.  The next is a printout of his LinkedIn

15   file and I will provide copies to counsel of this material.

16           The other is a copy of the media and press reports

17   that were referenced in our letter brief, Your Honor.  And I

18   also have -- I also have a copy of the Sixth Circuit's

19   Judicial Counsel Investigating Committee report, which I

20   submit --

21           THE COURT:  The one I struck from the record

22   earlier.  Go ahead.

23           MR. HAGEY:  No, we would be putting this under seal,

24   Your Honor.  I don't need this on the public record at all.

25   I'm simply asking it to be considered as part of the record of

1    these proceedings.

2              I have no idea what Your Honor has in mind in terms

3    of sanctions or other remedies.

4              THE COURT:  Yes, you do. I made it very clear.

5              MR. HAGEY:  Well, we are standing here in jeopardy.

6              THE COURT:  Yup.  That's correct.

7              MR. HAGEY:  Is there any objection, counsel, to

8    having this report placed under seal to address any concerns

9    that counsel had raised and the court has raised?

10             THE COURT:  Address me.

11             MR. HAGEY:  Your Honor, are there any objections to

12   placing this under seal, to comply with the court's order

13   relating to that issue?

14             THE COURT:  As you say, it's a public document?

15             MR. HAGEY:  We understand that this is a public

16   document.

17             THE COURT:  Than I don't see any need to put it

18   further on the record.

19             MR. HAGEY:  Okay. I just --

20             THE COURT:  Have a seat.  Anything from you, Mr.

21   Schlachet?

22             MR. SCHLACHET:  Your Honor, I don't think that

23   absent the court's inquiry that I'm going to make any remarks.

24             THE COURT:  Okay.  So I have granted the protective

25   order.  There will be no further discovery on the 1982

35

1    investigation of the surrounding circumstances and this is not

2    a ruling on relevance.

3         It is a ruling on cumulativeness and

4    proportionality, which is not to say I don't have grave

5    concerns about relevance, but I know you disagree about that

6    and I just don't want everybody to be wasting their resources

7    litigating it on a ground that is not an independent basis for

8    my ruling.

9         Should there be other discovery requests that you

10   want to make that pre-date the substantive matters in this

11   case, or that regardless of date are purely about Mr.

12   Schlachet -- and when I say purely about, I don't expect to

13   see game playing about well, it's about what he told his

14   client. If it's about his conduct, file a motion under seal

15   for leave to do it.

16        And I am going to take under advisement other

17   remedies.  Whatever rationalization you might come up with for

18   how you've acted in this case, I would be hard pressed to

19   believe that you didn't understand that you were doing

20   something that you were not supposed to do.  And how best to

21   address that is really what I have to think about.

22        Have a good day, everybody.

23        MR. SCHLACHET:  Thank you, Your Honor.

24        MR. HAGEY:  Thank you, Your Honor.

25        (Proceedings concluded at 10:25 a.m.)

1          I, CHRISTINE FIORE, court-approved transcriber and

2     certified electronic reporter and transcriber, certify that

3     the foregoing is a correct transcript from the official

4     electronic sound recording of the proceedings in the above-

5     entitled matter.

6

7          *Christine Fiore*

8     _____          January 22, 2020

9          Christine Fiore, CERT

10            Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24