# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**J. Noah Hagey, Esq.**
Managing Partner
hagey@braunhagey.com

January 23, 2020

**VIA ECF**

The Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    **Motion to Compel Plaintiff to Provide Further Responses to Defendants' First Set of Written Discovery –** *Pasik v. Boon Technologies, LLC, et al.***, Case No. 19-2357-FB-JO (E.D.N.Y.)**

Your Honor:

    On behalf of Defendants and pursuant to Local Rule 7.1(d) and the Court's Individual Practice II.B, we respectfully move to compel Plaintiff to address certain deficiencies in discovery noted below. The parties have engaged in written and telephonic meet-and-confer regarding the disputed discovery, but have been unable to resolve their disagreement. *See* **Exhibit 1**. We accordingly appreciate the Court's assistance in addressing the matter.

    As set forth below, Defendants respectfully seek prompt and full production of the requested material so that we have a meaningful opportunity to review it *before* Plaintiff's scheduled deposition on February 5, 2020.

    The subject discovery concerns the heart of Plaintiff's suit, namely, his claim to be misled by Wondercide's advertising that its Flea and Tick and Mosquito Control Spray is "naturally derived." Plaintiff asserts that Defendants should not have advertised the product this way because it contains sodium lauryl sulfate ("SLS") and ethyl lactate, substances Plaintiff asserts are "synthetic." *See* FAC, Dkt. No. 6, ¶¶ 10, 16; *see also id.* ¶ 22.[1] Plaintiff further alleges that he is a "very health conscious" consumer who only purchases products free of such ingredients.

    On December 13, 2019, Defendants propounded their first set of written discovery, including requests for production, interrogatories, and requests for admission. The discovery seeks to test Plaintiff's representations to the Court, including by determining whether Plaintiff

---

[1] As noted in Defendant's Pre-Motion Conference Letter (Dkt. No. 11), the SLS and ethyl lactate in Wondercide's products are certified naturally derived from plants.

San Francisco
351 California St., 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

New York
7 Times Square, 27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

January 23, 2020
Page 2

in fact refrains from purchasing other or similar household products that contain supposedly "non-naturally derived substances." (*See* FAC ¶¶ 22, 27, 59 ("Had Plaintiff known of the Product's chemical content, he would not have purchased the Product . . .")

Plaintiff served responses to these requests on January 16, 2020. His production in total consisted of only a handful of documents: an invoice for the product, a list of products he purchased on Amazon, and two internet articles cited by Plaintiff in his complaint. In doing so, Plaintiff objected to producing complete records of his purchases of household products. He also objected to numerous requests on grounds that the phrase "naturally derived" was vague and ambiguous and that Defendants had failed to supply a definition of this "technical term." But, of course, this is the same term Plaintiff allegedly relied upon in his Amended Complaint.

As noted below, Plaintiff cannot refuse to produce documents regarding his ordinary purchases of household products (pet products, cleaners, soaps, sprays, and similar items), nor contend he lacks sufficient information regarding the definition of "naturally derived" to respond to Defendants' discovery requests.

      **A.**      **Plaintiff's Deficient Responses to RFPs No. 1–4 and Interrogatories No. 1–4**

Defendants' RFPs No. 1–4 and Interrogatories No. 1–4 seek information related to Plaintiff's purchases of household, personal care, pet care, and food products. (*See* **Exhibits 2** (Def's RFPs), **3** (Pl's Resp. to RFPs), **4** (Def's Rogs), **5** (Pl's Resp. to Rogs), **6** (Def's RFAs), **7** (Pl's Resp. to RFAs) Plaintiff objects to these requests as overbroad and irrelevant. But the types of products at issue in these requests are precisely the sorts of products that are likely to contain SLS or ethyl lactate or other "synthetic ingredients," as those chemicals and ingredients are commonly found in many everyday household items such as toothpaste, soaps, or egg whites.

Plaintiff, in his demand letter, claims to be a "very health conscious" consumer. (*See* **Exhibit 8**.) In his Amended Complaint, Plaintiff also asserts that he relied on Defendants' statements that the product was naturally derived, that he was "appalled" by the alleged presence of synthetic ingredients in the product at issue, and that had he known of the presence of these ingredients, he would not have purchased the product or would have paid less for it. (Dkt. No. 6, ¶¶ 22, 27, 59, 77.)

Given these allegations, Defendants are entitled to seek discovery about Plaintiff's purchases of similar products to evaluate whether he is in fact a "very health conscious" consumer who avoids products with synthetic ingredients and is thus likely to have relied on Defendants' advertising.

While Plaintiff has turned over a limited portion of his Amazon history and has agreed to provide a list of purchases he made at Shoprite, he has expressly refused to turn over any other receipts or other purchase records. Such records would ensure Defendants have information regarding the relevant types of products purchased by Plaintiff, which Defendants could further explore during deposition or otherwise, and Plaintiff could easily produce these records at minimal expense and burden. It would be similarly easy and highly relevant for Plaintiff to identify his purchases, other than those made at Amazon or Shoprite, in response to Defendants'

January 23, 2020
Page 3

interrogatories.  For example, to the extent Plaintiff lacks record or receipts for specific purchases, his interrogatory responses should identify the specific household, personal care, pet care, and food products he has purchased during the relevant time period.  Accordingly, Defendants respectfully request the Court order Plaintiff to provide documents identifying his purchases of household, food, pet care, and personal care products in response to RFPs No. 1–4, and to respond in full to Interrogatories No. 1–4.

> **B.      Plaintiff's Deficient Responses to Requests Seeking Information About His Understanding of the Phrase "Naturally Derived" (RFPs No. 14–15, 25; Interrogatory No. 9; and RFAs 6, 13)**

RFPs No. 14–15, 25, and Interrogatory No. 9 seek documents and information regarding Plaintiff's allegations that SLS and Ethyl Lactate are not naturally derived.  Similarly, RFAs No. 6 and 13 ask that Plaintiff admit he has no evidence that SLS is not naturally derived.  Plaintiff has objected to all of these requests on the ground that the term "naturally derived" is vague and ambiguous because Defendants have not offered a definition of this term.  On this basis, Plaintiff has refused to respond to any of these requests.

Plaintiff's vague and ambiguous objection is improper for several reasons.  Plaintiff himself has proffered a definition of that term, including in opposition to Defendants' Motion to Dismiss, in which he variously asserts that it means that a product does "not contain any synthetic ingredients," "the absence of chemical substances," or "the absence of any chemicals." *See also* **Exhibit 1** (Pl.'s Resp. to Rog. No. 9).) And Plaintiff alleges that SLS and ethyl lactate are not naturally derived.  (*See* Dkt. No. 6 ¶¶ 10 (alleging SLS "does not naturally occur in nature"); *see also* ¶ 16.)  Plaintiff further alleges that "'100% Naturally Derived' is a material factor in each consumer's selection of the Product" (*id.* ¶ 34), that "BTL used 'naturally derived' in a misguided effort to avoid clear FTC precedent" and "to manipulate consumer expectations, i.e., deceive consumers into believing Product was free of chemical [*sic*] when it was not" (*id.* ¶ 43).

In order for Plaintiff to make such allegations in good faith, he must have some relevant evidence that SLS and ethyl lactate are not naturally derived, according to however he defines that term.  Said differently, Plaintiff cannot simultaneously claim that he was misled by the use of the term "naturally derived" yet also have no idea what that term means.  Accordingly, Defendants respectfully submit that Plaintiff should be compelled to provide responses to RFPs No. 14–15, 25, Interrogatory No. 9, and RFAs No. 6, 13.

> Respectfully submitted,
>
> J. Noah Hagey

Encl.

Cc:     Counsel of Record (via ECF)