# Mark Schlachet, Esq.

**Tel:216-225-7559**

email: markschlachet@me.com

**3515 Severn Road**
**Cleveland, Ohio 44118**

**1249 East 35th Street**
**Brooklyn, New York 11210**

**9511 Collins Ave.**
**Apt. 605**
**Surfside, FL 33154**
**(Succos-Shavuos)**

**Admitted: OH, NY**

January 24, 2020

Magistrate Judge James Orenstein
Eastern District of New York
225 Cadman Plaza East, Room 1227 South
Brooklyn, New York 11201

Re: Pasik v. Boon Technologies, LLC et al, Case No. 19-2357-FB-JO

Dear Judge Orenstein:

Undersigned is counsel to Plaintiff Chanan Pasik and writes in response to the 23 January letter of Attorney Andrew Levine, i.e. Defendant Boon Technologies' Rule 37 Motion to the Court.  We respectfully comment on four areas of interest.

First, Mr. Levine's letter is misleading, intended to serve the false narratives that have plagued the case from Day One.  He claims "[p]laintiff alleges that he is a 'very health conscious' consumer who only purchases products free of such ingredients." [1] Plaintiff never made such statement; but Defendant seeks to change focus from *its* advertising to Plaintiff's "green" credentials.  It does this by foisting a straw man issue on Plaintiff that Plaintiff never raised..

Second, Mr. Levine refers to Plaintiff's "claim to be misled by "naturally derived."  This too is inaccurate.  As Defendants fleetingly state in their yet-to-be-filed motion to dismiss (Mem. at 1): "Plaintiff has filed this suit because he claims that he went to Amazon.com, saw the language "Safe, 100% Naturally Derived, no toxic ingredients."  Now, Defendant wants the case to be all about "naturally derived," and wants to force Plaintiff to define "naturally derived."  But the tactic of forcing a plaintiff to define "naturally derived" has been rejected:

---

[1] Plaintiff respectfully submits the "meet and confer" history in this matter as attachments hereto.

it argues that Shank's allegation that the Every Man Jack marketing and labeling is false and misleading is unreasonable and conclusory because Shank does not "provide a standard or definition for what constitutes a 'natural' versus 'naturally derived' versus 'plant-based' cosmetic."

*Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 U.S. Dist. LEXIS 10894, at *25-26 (N.D. Cal. Jan. 23, 2018).  Plaintiff has advised Wondercide over and over again:  "[i]t is now well established in the Ninth Circuit that for purposes of a motion to dismiss a reasonable consumer could understand the statements '100% natural' or 'all natural' or 'natural' together **with other terms implying 'all natural' to mean that a product does not contain any non-natural ingredients**." *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 U.S. Dist. LEXIS 175273, 2017 WL 4773426, at *5 (N.D. Cal. Oct. 23, 2017)(emphasis added).   See also, *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016)("_not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients....")

If Wondercide wants to ask questions about *its term,* "naturally derived," it should provide a definition of such a "technical term:"

A **technical term** used in a claim is interpreted as having the meaning that it would be given by persons of ordinary skill in the art, unless it is apparent from the patent and prosecution history that the inventor used the term with a different meaning. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996).

*Intellectual Prop. Dev. v. UA-Columbia Cablevision*, 94 Civ. 6296 (SS), 1998 U.S. Dist. LEXIS 3901, at *55 (S.D.N.Y. Mar. 24, 1998).  Indeed as stated, "naturally derived" is not at issue; rather, all agree that "Safe, 100% Naturally Derived, no toxic ingredients" are at issue.  And if "naturally derived" were at issue, Plaintiff would have no way of knowing what Wondercide means by the terminology, e.g. does it apply to each ingredient or the product as a whole?

We offered a compromise:

Again, if Wondercide will restate its request to address "100% naturally derived," we will respond as to what Mr. Pasik thought at the time in question.

Mr. Levine did not respond to this offer.

Third, the Rule 37 Motion and its exhibits give the impression that we are before this Court because undersigned failed to "get back to [Mr. Levine] **tomorrow [1/23] by noon PT.**" **See Mem. at Exhibit 1.  In fact, Plaintiff spoke with his client the evening of January 22d and reported to Mr. Levine, with a full response to his then-pending email, at 9:10 PM that evening: "**My follow-up with my client is reported below, interlineated. He will ask Shoprite if they have a running, itemized account and he will reconnect with me on the issue."  In the client

conference that evening, undersigned discussed every topic in Mr. Levine's email, Exhibit 1 to his Memorandum

We have cooperated completely with Mr. Levine, as the email string attests (see Exhibit hereto) including providing Mr. Pasik's running account of Amazon purchases since April 2018. Mr. Levine claims our disclosure as to not having additional purchase receipts is "not credible" and that we should promptly provide:

    1,  Screenshot of all internet (including Amazon) purchases over the last 3 years.

    2.  Photos from his home of all household cleaning, pest and similar products currently in the following locations: kitchen sink cabinet or cupboard, laundry room, storage closet, pet closet, bathroom cabinets, garage, or other locations where such products are stored.

We respectfully declined to create dozens or hundreds of pictures, which we have no obligation to create, of purchased items which have no relevance to whether Wondercide's online advertising was misleading.

Fourth, the notion of examining all of Mr.; Pasik's household purchases since April 2018 coordinates with the argument that Mr. Pasik needs "green" credentials.  Here is the argument as expressed by Mr. Levine in correspondence:

His purchases of other household, personal care, pet care, and food products (and whether they contain these ingredients) is thus relevant to evaluate whether Plaintiff could have actually been misled about, or injured by, the presence of SLS or ethyl lactate in this case.

The problem with Mr. Levine's argument is that this case has nothing to do with whether Mr. Pasik was misled about or injured by the presence of  SLS or ethyl lactate in the Product.  It has to do with the "net impression" of Wondercide advertising: "[t]he key is the overall net impression of the ad — that is, whether the claims consumers take from the ad are truthful and substantiated." FTC, *.com Disclosures, How to Make Effective Disclosures in Digital Advertising* (March 2013)

In a recent discovery dispute similar to this, Magistrate Judge Sunil R. Harjani denied discovery of irrelevant material similar to what is requested here: "Significantly, Nature's Sources has not offered any evidence from the record indicating that Amazon's February 27, 2019 suspension of Eternity Mart was caused by anything other than Nature's Sources complaint."  Similarly here, Mr. Pasik's reaction to "Safe, 100% Naturally Derived, no toxic ingredients" is wholly disjointed from whether he was misled about the presence of  SLS or ethyl lactate in the Product.  *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *7-8 (N.D. Ill. Nov. 15, 2019).

Respectfully submitted,

/s/  Mark Schlachet